Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JUAN TORRES, GERARDO CONTRERAS
MORALES, BUENAVENTURA CASIANO
MENDOZA, DIONELDO VELASQUEZ                        **COMPLAINT**
NAVARRO, FLORENTE SOLANO GARCIA (AKA
EDUARDO), ENRIQUE ROMERO, GABINO                   **ECF Case**
PAJARITO, JOSE GERARDO CARRETERO
GUTIERREZ, and JOSE MARIO UBALDO
MORENO,

                              *Plaintiffs,*

                    -against-

ETHOS GALLERY 51 LLC (d/b/a ETHOS
GALLERY 51), LITTLE WEST RESTAURANT LLC
(d/b/a PATHOS CAFÉ) IOANNIS CHATIRIS, and
CHRISTOS PANAGIOTOPOULOS,

                              *Defendants.*
-------------------------------------------------------------X

        Plaintiffs Juan Torres, Gerardo Contreras Morales, Buenaventura Casiano Mendoza,

Dioneldo Velasquez Navarro, Florente Solano Garcia (AKA Eduardo), Enrique Romero, Gabino

Pajarito, Jose Gerardo Carretero Gutierrez, and Jose Mario Ubaldo Moreno, (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon

information and belief, and as against each of Defendants Ethos Gallery 51 LLC (d/b/a Ethos

Gallery 51), Little West Restaurant LLC (d/b/a Pathos Café), Ioannis Chatiris and Christos

Panagiotopoulos (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

1.      Plaintiffs are current and former employees of Defendants Ethos Gallery 51 LLC (d/b/a Ethos Gallery 51), Little West Restaurant LLC (d/b/a Pathos Café), ("Defendant Corporations") Ioannis Chatiris, and Christos Panagiotopoulos.

2.      Ethos Gallery 51 and Pathos Cafe are Greek restaurants owned by Ioannis Chatiris and Christos Panagiotopoulos located at 905 First Avenue, New York, New York 10022 and 932 1st Avenue, New York, NY 10022, respectively.

3.      Upon information and belief, Defendants Ioannis Chatiris and Christos Panagiotopoulos serve or served as owners, managers, principals or agents of Defendant Corporations, and through these corporate entities, operate or operated the Greek restaurants.

4.      Plaintiffs are current and former employees of Defendants.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

8.      In addition, defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and made unlawful deductions from Plaintiffs' wages.

9.     Defendants maintained a policy and practice of requiring Plaintiffs to work without paying them the minimum wage and overtime compensation required by both federal and state laws and regulations.

10.    Plaintiffs now bring this action for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question).  Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

12.    Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

13.    Plaintiff Juan Torres ("Plaintiff Torres" or "Mr. Torres") is an adult individual residing in Queens County, New York.

3

14.     Plaintiff Torres was employed by Defendants at the Ethos Gallery and Pathos locations from approximately July 2014 until on or about November 25, 2016.

15.     Plaintiff Gerardo Contreras Morales ("Plaintiff Contreras " or "Mr. Contreras") is an adult individual residing in Bronx County, New York.

16.     Plaintiff Contreras was employed by Defendants at the Ethos Gallery location from approximately March 2012 until on or about November 12, 2016.

17.     Plaintiff Buenaventura Casiano Mendoza ("Plaintiff Casiano" or "Mr. Casiano") is an adult individual residing in New York County, New York.

18.     Plaintiff Casiano was employed by Defendants at the Ethos Gallery and Pathos locations from approximately June 2013 until on or about January 25, 2017.

19.     Plaintiff Dioneldo Velasquez Navarro ("Plaintiff Velasquez" or "Mr. Velasquez") is an adult individual residing in Queens County, New York.

20.     Plaintiff Velasquez has been employed by Defendants at the Ethos Gallery location from approximately 2010 until the present date.

21.     Plaintiff Florente Solano Garcia (aka Eduardo) ("Plaintiff Solano" or "Mr. Solano") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Solano was employed by Defendants at the Ethos Gallery location from approximately May 2013 until on or about February 3, 2017.

23.     Plaintiff Enrique Romero ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Hudson County, New Jersey.

24.     Plaintiff Romero was employed by Defendants at the Ethos Gallery location from approximately January 2016 until on or about November 2016.

4

25.     Plaintiff Gabino Pajarito ("Plaintiff Pajarito" or "Mr. Pajarito") is an adult individual residing in Queens County, New York.

26.     Plaintiff Pajarito has been employed by Defendants at the Ethos Gallery location from approximately 2009 until the present date.

27.     Plaintiff Jose Gerardo Carretero Gutierrez ("Plaintiff Carretero" or "Mr. Carretero") is an adult individual residing in Queens County, New York.

28.     Plaintiff Carretero was employed by Defendants at the Ethos Gallery location from approximately 2010 until on or about December 21, 2016.

29.     Plaintiff Jose Mario Ubaldo Moreno ("Plaintiff Ubaldo" or "Mr. Ubaldo") is an adult individual residing in Queens County, New York.

30.     Plaintiff Ubaldo has been employed by Defendants at the Ethos Gallery location from approximately March 2012 until the present date.

*Defendants*

31.     At all times relevant to this complaint, Defendants owned, operated, and/or controlled two Greek restaurants located at 905 First Avenue, New York, New York 10022 under the name "Ethos Gallery 51" and 932 1st Avenue, New York, NY 10022 under the name Pathos Cafe.

32.     Upon information and belief, Ethos Gallery 51 LLC ("Defendant Corporation"), is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 905 First Avenue, New York, New York 10022.

5

33.     Upon information and belief, Little West Restaurant LLC ("Defendant Corporation") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 932 1st Avenue, New York, NY 10022.

34.     Defendant Ioannis Chatiris is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.  Defendant Ioannis Chatiris is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporations.

35.     Defendant Ioannis Chatiris possesses or possessed operational control over Defendant Corporations, had an ownership interest in Defendant Corporations, and/or controlled significant functions of Defendant Corporations.

36.     Defendant Ioannis Chatiris determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

37.     Defendant Christos Panagiotopoulos is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.  Defendant Christos Panagiotopoulos is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.

38.     Defendant Christos Panagiotopoulos possesses or possessed operational control over Defendant Corporations, had an ownership interest in Defendant Corporations, and/or controlled significant functions of Defendant Corporations.

39.     Defendant Christos Panagiotopoulos determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

40.     Defendants operate two Greek restaurants located at 905 First Avenue, New York, New York 10022 and 932 1st Avenue, New York, NY 10022.

41.      Individual Defendants Ioannis Chatiris and Christos Panagiotopoulos possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

42.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

43.     Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, referred to herein.

44.     Defendants jointly employed Plaintiffs, and are Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

45.     In the alternative, Defendants constitute a single employer of Plaintiffs.

46.     Upon information and belief, individual Defendants Ioannis Chatiris and Christos Panagiotopoulos operate Defendant Corporations as either alter egos of themselves, and/or fail to

7

operate Defendant Corporations as legal entities separate and apart from themselves by, among other things:

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b)     defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)     transferring assets and debts freely as between all Defendants;

(d)     operating Defendant Corporations for their own benefit as the sole or majority shareholders;

(e)     operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations or closely controlled entities;

(f)     intermingling or comingling assets and debts of their own with Defendant Corporations;

(g)     diminishing and/or transferring assets of Defendant Corporations to protect their own interests; and

(h)     Other actions evincing a failure to adhere to the corporate form.

47.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

8

48.     Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

49.     In each year from 2011 through 2016, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

50.     In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce.  For example, numerous items that were sold in the Greek restaurants on a daily basis, such as olives and Greek beer, were produced outside of the State of New York.

*Individual Plaintiffs*

51.     Plaintiffs are current and former employees of Defendants, employed as busboys and/or food runners, porters, cooks, food preparers, dishwashers, and delivery workers.

*Plaintiff Juan Torres*

52.     Plaintiff Torres was employed by Defendants from approximately July 2014 until on or about November 25, 2016 at both the Ethos Gallery and Pathos locations.

53.     At all times relevant to this Complaint, Plaintiff Torres was ostensibly employed by Defendants as a busboy.

54.     Plaintiff Torres regularly handled goods in interstate commerce, such as olives and Greek beer produced outside of the State of New York.

55.      Plaintiff Torres' work duties required neither discretion nor independent judgment.

9

56.     Plaintiff Torres regularly worked in excess of 40 hours per week.

57.     From approximately July 2014 until on or about September 2016, Plaintiff Torres worked from approximately 5:00 p.m. until on or about 1:00 a.m. Tuesdays through Thursdays, from approximately 5:00 p.m. until on or about 2:00 a.m. Fridays and Saturdays at the Ethos Gallery location (typically 42 hours per week).

58.     However, during the months of January, February and March of 2015 and 2016 Plaintiff Torres worked from approximately 5:00 p.m. until on or about 1:00 a.m. Tuesdays through Thursdays, from approximately 5:00 p.m. until on or about 2:00 a.m. on two Fridays every month, and from approximately 5:00 p.m. until on or about 4:00 a.m. two Fridays a month and every Saturday at the Ethos Gallery location (typically 44 to 46 hours per week)

59.     In addition, from approximately 2015 until on or about September 2016, Plaintiff Torres worked approximately ten shifts (six hours each) at the Pathos location.

60.     From approximately July 2014 until on or about September 2016, Plaintiff Torres was paid his wages by personal check.

61.     From approximately July 2014 until on or about September 2016, defendants paid Plaintiff Torres a fixed salary of $100 per shift.

62.     Prior to approximately September 2016, Plaintiff Torres' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

63.     For example, prior to September 2016, defendants frequently required Plaintiff Torres to work 30 minutes to one hour past his scheduled departure time and did not compensate him for the additional time they required him to work.

64.     Also, Defendants failed to pay Plaintiff Torres his last two paychecks (a total of approximately $136.00) because he wouldn't sign a document.

65.     Defendants never granted Plaintiff Torres any breaks during his work shifts.

66.     Prior to approximately September 2016, Plaintiff Torres was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

67.     Plaintiff Torres was never notified by Defendants that his tips would be included as an offset for wages.

68.     Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Torres' wages.

69.     In addition, prior to approximately September 2016, defendants withheld all of the tips Plaintiff Torres earned performing his job as a busboy.

70.     Defendants did not provide Plaintiff Torres with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

71.     Defendants never provided Plaintiff Torres with a written notice, in English and in Spanish (Plaintiff Torres' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

72.     Until approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Torres regarding overtime and wages under the FLSA and NYLL.

73.     Defendants required Plaintiff Torres to purchase "tools of the trade" with his own funds—including thirty aprons, twenty pairs of shoes, twenty shirts, and thirty pairs of pants.

11

*Gerardo Contreras Morales*

74.     Plaintiff Contreras was employed by Defendants from approximately March 2012 until on or about November 12, 2016 at the Ethos Gallery location.

75.     At all times relevant to this Complaint, Plaintiff Contreras was ostensibly employed by Defendants as a busboy and food runner.

76.     Plaintiff Contreras regularly handled goods in interstate commerce such as olives and Greek beer, produced outside of the State of New York.

77.     Plaintiff Contreras' work duties required neither discretion nor independent judgment.

78.     Plaintiff Contreras regularly worked in excess of 40 hours per week.

79.     From approximately March 2012 until on or about May 2014, Plaintiff Contreras worked an average of 55 hours per week as a busboy at the Ethos Gallery location.

80.     From approximately May 2014 until on or about September 2016, Plaintiff Contreras worked from approximately 5:00 p.m. until on or about 12:30 a.m. Wednesdays, Thursdays and Fridays, from approximately 10:00 a.m. until on or about 12:00 a.m. on Saturdays, and from approximately 10:00 a.m. until on or about 11:00 p.m. on Mondays as a food runner at the Ethos Gallery location (typically 49.5 hours per week).

81.     From approximately March 2012 until on or about September 2016 Plaintiff Contreras was paid by personal and company checks.

82.     From approximately March 2012 until on or about early 2014, Plaintiff Contreras was paid a fixed salary of $400 per week.

83.     From approximately early 2014 until on or about early 2015, Plaintiff Contreras was paid a fixed salary of $650 per week.

84.     From approximately early 2015 until on or about September 2016, Plaintiff Contreras was paid a fixed salary of $700 per week.

85.     However, prior to approximately September 2016 Plaintiff Contreras's company checks did not indicate the correct amount of hours he worked per week.

86.     In addition, Defendants frequently underpaid Plaintiff Contreras. For example, they would pay him $650 when he was expected to earn $700 for a week's work. Moreover, in a few instances, Plaintiff Contreras was paid more than his expected weekly salary to make up for missing pay from prior weeks.

87.     In addition, from approximately March 2012 until on or about September 2016, during weeks when the company checks had no funds, Plaintiff Contreras was paid solely by personal checks.

88.     Prior to approximately September 2016, Plaintiff Contreras's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

89.     For example, defendants regularly required Plaintiff Contreras to arrive one hour prior to his scheduled departure time and depart one hour past his scheduled departure time, and did not compensate him for the additional time they required him to work.

90.     Defendants never granted Plaintiff Contreras any breaks during his work shifts.

91.     Prior to approximately September 2016, Plaintiff Contreras was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

13

92.     In addition, prior to approximately September 2016, defendants withheld all or part of the tips Plaintiff Contreras earned performing his job as a busboy.

93.     Defendants never provided Plaintiff Contreras with a written notice, in English and in Spanish (Plaintiff Contreras' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

94.     Prior to approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Contreras regarding overtime and wages under the FLSA and NYLL.

95.     Defendants required Plaintiff Contreras to purchase "tools of the trade" with his own funds—including five work shirts, and a number of shoes and work pants.

*Plaintiff Buenaventura Casiano Mendoza*

96.     Plaintiff Casiano was employed by Defendants from approximately June 2013 until on or about January 25, 2017 at the Ethos Gallery and Pathos locations.

97.     At all times relevant to this Complaint, Plaintiff Casiano was ostensibly employed by Defendants as a cook and food preparer.

98.     Plaintiff Casiano regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

99.     Plaintiff Casiano's work duties required neither discretion nor independent judgment.

100.    Plaintiff Casiano regularly worked in excess of 40 hours per week.

101.    From approximately June 2013 until on or about February 2016, Plaintiff Casiano worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays, Tuesdays,

Wednesdays and Thursdays and from approximately 11:00 a.m. until on or about 11:30 p.m. Fridays and Saturdays at the Ethos Gallery location (typically 73 hours per week).

102.    From approximately February 2016 until on or about May 2016, Plaintiff Casiano worked from approximately 7:00 a.m. until on or about 11:00 a.m. Mondays through Fridays at the Pathos location, from approximately 11:00 a.m. until on or about 7:00 p.m., Mondays through Fridays at the Ethos Gallery location, and from approximately 11:00 am until on or about 11:00 p.m. on Saturdays at the Ethos Gallery location (typically 72 hours per week).

103.    From approximately May 2016 until on or about September 2016, Plaintiff Casiano worked from approximately 11:00 a.m. until on about 11:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 11:30 p.m. Fridays and Saturdays at the Ethos Gallery location (typically 73 hours per week).

104.    From approximately June 2013 until on or about September 2016, Plaintiff Casiano was paid his wages by personal check.

105.    From approximately June 2013 until on or about September 2016, defendants paid Plaintiff Casiano a fixed salary of $900 per week.

106.    Prior to September 2016, Plaintiff Casiano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

107.    For example, defendants regularly required Plaintiff Casiano to depart 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

108.    Defendants never granted Plaintiff Casiano any breaks during his work shifts.

109.    Prior to approximately September 2016, Plaintiff Casiano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

110.    Defendants did not provide Plaintiff Casiano with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

111.    Defendants never provided Plaintiff Casiano with a written notice, in English and in Spanish (Plaintiff Casiano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

112.    Prior to late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Casiano regarding overtime and wages under the FLSA and NYLL.

113.    Defendants required Plaintiff Casiano to purchase "tools of the trade" with his own funds—including eight shirts, five pairs of shoes, and ten hats.

*Plaintiff Dioneldo Velasquez Navarro*

114.    Plaintiff Velasquez has been employed by Defendants from approximately 2010 until the present date at the Ethos Gallery location.

115.    At all times relevant to this Complaint, Plaintiff Velasquez was employed by Defendants as a dishwasher, porter, food preparer and as a delivery worker.

116.    Plaintiff Velasquez regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

117.     Plaintiff Velasquez's work duties required neither discretion nor independent judgment.

118.    Plaintiff Velasquez regularly worked in excess of 40 hours per week.

16

119.    From approximately March 2011 until on or about September 2016, Plaintiff Velasquez worked from approximately 11:00 a.m. until on or about 9:00 p.m. or 10:00 p.m. six days per week at the Ethos Gallery location (typically 60 to 66 hours per week).

120.    From approximately March 2011 until on or about September 2016, Plaintiff Velasquez was paid his wages by both personal and business checks.

121.    From approximately March 2011 until on or about September 2016, defendants paid Plaintiff Velasquez a fixed salary of $600 per week.

122.    However, prior to approximately September 2016 Plaintiff Velasquez's company checks did not indicate the correct amount of hours he worked per week.

123.    Prior to approximately September 2016, Plaintiff Velasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

124.    For example, defendants regularly required Plaintiff Velasquez to depart 30 minutes to one hour past his scheduled departure time, and did not compensate him for the additional time they required him to work.

125.    Defendants never granted Plaintiff Velasquez meal breaks or rest periods of any kind.

126.    Prior to approximately September 2016, Plaintiff Velasquez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

127.    Prior to approximately September 2016, Defendants did not provide Plaintiff Velasquez with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

17

128.     Defendants never provided Plaintiff Velasquez with a written notice, in English and in Spanish (Plaintiff Velasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

129.     Prior to late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Velasquez regarding overtime and wages under the FLSA and NYLL.

*Plaintiff Florente Solano Garcia (aka Eduardo)*

130.     Plaintiff Solano was employed by Defendants from approximately May 2013 until on or about February 3, 2017 at the Ethos Gallery location.

131.     At all times relevant to this Complaint, Plaintiff Solano was employed by Defendants as a dishwasher, delivery worker, and as a cook.

132.     Plaintiff Solano regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

133.     Plaintiff Solano's work duties required neither discretion nor independent judgment.

134.     Plaintiff Solano regularly worked in excess of 40 hours per week.

135.     From approximately May 2013 until on or about September 2016 Plaintiff Solano worked from approximately 2:00 p.m. until on or about 1:00 a.m. or 1:30 a.m. six days per week at the Ethos Gallery location (typically 66 to 69 hours per week).

136.     From approximately May 2013 until on or about September 2016 Plaintiff Solano was paid his wages by personal check. However, for a period of approximately two or three months in 2015, Plaintiff Solano was paid by personal and business checks.

18

137.    From approximately May 2013 until on or about early 2014, Plaintiff Solano was paid a fixed salary of $500 per week.

138.    From approximately early 2014 until on or about September 2016, Plaintiff Solano was paid a fixed salary of $620 per week.

139.    Prior to approximately September 2016, Plaintiff Solano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

140.    For example, defendants regularly required Plaintiff Solano to depart 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

141.    Prior to approximately September 2016, Defendants did not grant Plaintiff Solano any breaks during his work shifts.

142.    Prior to approximately September 2016, Plaintiff Solano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

143.    Defendants did not provide Plaintiff Solano with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

144.    Defendants never provided Plaintiff Solano with a written notice, in English and in Spanish (Plaintiff Solano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

145.    Prior to approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Solano regarding overtime and wages under the FLSA and NYLL.

19

*Plaintiff Enrique Romero*

146.     Plaintiff Romero was employed by Defendants from approximately January 2016 until on or about November 2016 at the Ethos Gallery location.

147.     At all times relevant to this Complaint, Plaintiff Romero was employed by Defendants as a dishwasher, food preparer, and a delivery worker.

148.     Plaintiff Romero regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

149.     Plaintiff Romero's work duties required neither discretion nor independent judgment.

150.     Plaintiff Romero regularly worked in excess of 40 hours per week.

151.     From approximately January 2016 until on or about September 2016, Plaintiff Romero worked from approximately 2:00 p.m. until on or about 2:00 a.m. or 2:30 a.m., Mondays through Saturdays at the Ethos Gallery location (typically 72 to 75 hours per week).

152.     From approximately January 2016 until on or September 2016, Plaintiff Romero was paid his wages by personal check.

153.     From approximately January 2016 until on or about March 2016, defendants paid Plaintiff Romero a fixed salary of $450 per week.

154.     From approximately March 2016 until on or about September 2016, defendants paid plaintiff Romero a fixed salary of $500 per week.

155.     Prior to approximately September 2016, Plaintiff Romero's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

156. For example, defendants regularly required Plaintiff Romero to depart 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

157. Defendants did not grant Plaintiff Romero any breaks during his work shifts.

158. Prior to approximately September 2016, Plaintiff Romero was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

159. Defendants did not provide Plaintiff Romero with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

160. Defendants never provided Plaintiff Romero with a written notice, in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

161. Prior to approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Romero regarding overtime and wages under the FLSA and NYLL.

162. Defendants required Plaintiff Romero to purchase "tools of the trade" with his own funds—including five shirts, three pairs of kitchen shoes, a helmet, three bicycles, and a lock and chain.

*Plaintiff Gabino Pajarito*

163. Plaintiff Pajarito has been employed by Defendants from approximately June 2009 until the present date at the Ethos Gallery location.

21

164.    At all times relevant to this Complaint, Plaintiff Pajarito was ostensibly employed by Defendants as a busboy.

165.    Plaintiff Pajarito regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

166.    Plaintiff Pajarito's work duties required neither discretion nor independent judgment.

167.    Plaintiff Pajarito regularly worked in excess of 40 hours per week.

168.    From approximately March 2011 until on or about September 2016, Plaintiff Pajarito worked from approximately 10:00 a.m. until on or about 10:00 p.m. four days a week and from approximately  10:00 a.m. until on or about 10:30 p.m. two days a week at the Ethos Gallery location (typically 73 hours per week).

169.    From approximately March 2011 until on or about September 2016, Plaintiff Pajarito was paid his wages by personal and company checks.

170.    From approximately March 2011 until on or about early 2015, defendants paid Plaintiff Pajarito a fixed salary of $900 per week.

171.    From approximately early 2015 until on or about September 2016, defendants paid Plaintiff Pajarito a fixed salary of $1000 per week.

172.    However, prior to approximately September 2016 Plaintiff Pajarito's company checks did not indicate the correct amount of hours he worked per week.

173.    Prior to September 2016, Plaintiff Pajarito's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

22

174.   For example, prior to September 2016, defendants regularly required Plaintiff Pajarito to work at least 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

175.   Defendants did not grant Plaintiff Pajarito any breaks during his work shifts.

176.   Prior to approximately September 2016, Plaintiff Pajarito was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

177.   Prior to September 2016, Plaintiff Pajarito was never notified by Defendants that his tips would be included as an offset for wages.

178.   In addition, prior to approximately September 2016, defendants withheld all or part of the tips Plaintiff Pajarito earned performing his job as a busboy.

179.   Prior to approximately September 2016, Defendants did not provide Plaintiff Pajarito with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

180.   Defendants never provided Plaintiff Pajarito with a written notice, in English and in Spanish (Plaintiff Pajarito's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

181.   Prior to approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Pajarito regarding overtime and wages under the FLSA and NYLL.

182.   Defendants required Plaintiff Pajarito to purchase "tools of the trade" with his own funds—including ten black shirts per year and ten pairs of black pants per year.

23

*Plaintiff Jose Gerardo Carretero Gutierrez*

183.    Plaintiff Carretero was employed by Defendants from approximately 2010 until on or about December 21, 2016 at the Ethos Gallery location.

184.    At all times relevant to this Complaint, Plaintiff Carretero was employed by Defendants as a dishwasher, porter, food preparer, and a delivery worker.

185.    Plaintiff Carretero regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

186.     Plaintiff Carretero's work duties required neither discretion nor independent judgment.

187.    Plaintiff Carretero regularly worked in excess of 40 hours per week.

188.    From approximately March 2011 until on or about September 2016, Plaintiff Carretero worked from approximately 8:00 a.m. until on or about 7:00 p.m. four days per week and from approximately 8:00 a.m. until on or about 7:30 p.m. two days per week at the Ethos Gallery location (typically 67 hours per week).

189.    From approximately March 2011 until on or about 2013, Plaintiff Carretero was paid his wages by personal check.

190.    From approximately 2013 until on or about September 2016, Plaintiff Carretero was paid his wages by personal and company checks.

191.    From approximately March 2011 until on or about 2013, defendants paid Plaintiff Carretero a fixed salary of $420 per week.

192.    From approximately 2013 until on or about September 2016, defendants paid Plaintiff Carretero a fixed salary of $700 per week.

193.    However, prior to approximately September 2016 Plaintiff Carretero's company checks did not indicate the correct amount of hours he worked per week.

194.    Prior to approximately September 2016, Plaintiff Carretero's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

195.    For example defendants frequently required Plaintiff Carretero to work 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

196.    Plaintiff Carretero was often unable to take breaks during his work shifts.

197.    Prior to approximately September 2016, Plaintiff Carretero was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

198.    Defendants did not provide Plaintiff Carretero with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

199.    Defendants never provided Plaintiff Carretero with a written notice, in English and in Spanish (Plaintiff Carretero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

200.    Prior to late 2016, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Carretero regarding overtime and wages under the FLSA and NYLL.

201.    Defendants required Plaintiff Carretero to purchase "tools of the trade" with his own funds—including twenty pairs of shoes, six bicycles, one helmet, and expenses for bicycle maintenance.

*Plaintiff Jose Mario Ubaldo Moreno*

202.    Plaintiff Ubaldo has been employed by Defendants from approximately March 2012 until the present date at the Ethos Gallery location.

203.    At all times relevant to this Complaint, Plaintiff Ubaldo was employed by Defendants as a dishwasher, food preparer, porter, and delivery worker.

204.    Plaintiff Ubaldo regularly handled goods in interstate commerce, such as olives and Greek beer, produced outside of the State of New York.

205.    Plaintiff Ubaldo's work duties required neither discretion nor independent judgment.

206.    Plaintiff Ubaldo regularly worked in excess of 40 hours per week.

207.    From approximately March 2012 until on or about September 2016, Plaintiff Ubaldo worked from approximately 2:00 p.m. until on or about 1:00 a.m. four days per week and from approximately 2:00 p.m. until on or about 1:30 a.m. two days per week at the Ethos Gallery location (typically 67 hours per week).

208.    From approximately March 2012 until on or about September 2016 Plaintiff Ubaldo was paid his wages by company and business checks.

209.    From approximately March 2012 until on or about May 2014, defendants paid Plaintiff Ubaldo a fixed salary of $420 per week.

210.    From approximately May 2014 until on or about May 2015, defendants paid Plaintiff Ubaldo a fixed salary of $450 per week.

211.    From approximately May 2015 until on or about January 2016, defendants paid Plaintiff Ubaldo a fixed salary of $500 per week.

26

212.    From approximately January 2016 until on or about September 2016, defendants paid Plaintiff Ubaldo a fixed salary of $550 per week.

213.    However, prior to approximately September 2016 Plaintiff Ubaldo's company checks did not indicate the correct amount of hours he worked per week.

214.    Prior to approximately September 2016, Plaintiff Ubaldo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

215.    For example defendants frequently required Plaintiff Ubaldo to work at least 30 minutes past his scheduled departure time, and did not compensate him for the additional time they required him to work.

216.    Defendants never granted Plaintiff Ubaldo any breaks during his work shifts.

217.    Prior to approximately September 2016, Plaintiff Ubaldo was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

218.    Defendants did not provide Plaintiff Ubaldo with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

219.    Defendants never provided Plaintiff Ubaldo with a written notice, in English and in Spanish (Plaintiff Ubaldo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

220.    Prior to approximately late 2016, no notification, either in the form of posted notices or other means, was given to Plaintiff Ubaldo regarding overtime and wages under the FLSA and NYLL.

221.    Defendants required Plaintiff Ubaldo to purchase "tools of the trade" with his own

funds—including a bicycle, lock and chain, helmet, lights, and two pairs of shoes per year.

*Defendants' General Employment Practices*

222.    Defendants regularly required Plaintiffs, to work in excess of forty (40) hours per week without paying them the proper minimum wage, spread of hours pay or overtime, compensation.

223.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without paying them appropriate minimum wage, spread of hours pay  and/or overtime compensation, as required by federal and state laws.

224.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving Plaintiffs of the tips earned during the course of employment.

225.    Specifically, prior to approximately September 2016, Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, in violation of New York Labor Law § 196-d (2007).

226.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

227.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiff's effective rate of pay falling below the required minimum wage rate.

228.    Defendants failed to maintain a record of tips earned by Plaintiffs for the services they made for customers.

229.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

230.    For most of their employment with defendants, Plaintiffs were paid their wages by a combination of personal checks and company checks.

231.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

232.    By employing these practices, Defendants avoided paying Plaintiffs the minimum wage for their regular hours and the overtime compensation for their hours worked over 40 each week.

233.    Prior to approximately late 2016, Defendants failed to post required wage and hour posters in the Greek restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

234.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs  properly

for (1) their full hours worked, (2) minimum wage, (3) spread of hours pay  and (4) overtime wages,.

235.    Prior to approximately September 2016, defendants failed to provide Plaintiffs with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

236.    Defendants failed to provide Plaintiffs, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language of Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law § 195(1).

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

237.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

238.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

239.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

240.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

241.    Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

242.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

243.    Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE FLSA OVERTIME PROVISIONS

244.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

245.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

246.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

247.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203 (r-s).

248.     Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

249.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

250.      Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK MINIMUM WAGE LAW

251.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

252.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

253.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

254.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

255.     Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW

256.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

32

257.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

258.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

259.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING**
**REQUIREMENTS OF THE NEW YORK LABOR LAW**

260.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

261.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

262.    Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

263.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

264.    Defendants did not provide Plaintiffs with a statement of wages with each payment of wages, as required by NYLL § 195(3).

265.    Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(RECOVERY OF EQUIPMENT COSTS)**

266.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

267.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as shoes and clothing, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

268.    Plaintiffs were damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(VIOLATION OF THE TIP WITHHOLDING PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

269.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

270.    Defendants unlawfully and without permission from Plaintiffs misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs.

271.    Defendants' action violated NYLL §196-d.

272.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(b)    Declaring that Defendants violated the overtime wage provisions of, and

34

associated rules and regulations under, the FLSA as to Plaintiffs;

(c)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' compensation, hours, wages, and any deductions or credits taken against wages;

(d)      Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs;

(e)      Awarding Plaintiffs  damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(f)      Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(j)      Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs;

35

(k)      Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages and damages for any improper deductions or credits taken against wages, under the NYLL as applicable;

(l)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation and damages for any improper deductions or credits taken against wages shown to be owed pursuant to NYLL § 663 as applicable;

(m)      Awarding Plaintiffs  damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)      Declaring that Defendants' violations of NYLL § 191 were willful as to Plaintiffs;

(o)      Awarding Plaintiffs damages for Defendants' failure to pay Plaintiffs in a timely fashion, as required by NYLL § 191;

(p)      Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(q)       Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.


JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

36

Dated: New York, New York
        March 22, 2017

                            MICHAEL FAILLACE & ASSOCIATES, P.C.


                            ____/s/ Michael Faillace_____
                            By:    Michael A. Faillace [MF-8436]
                                   60 East 42nd Street, Suite 2540
                                   New York, New York 10165
                                   (212) 317-1200
                                   *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 6, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     **Juan R. Torres**

                                   Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                      06 de diciembre de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 9, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)

Name / Nombre:                          Gerardo Contreras Morales

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           09 de enero de 2017

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Buenaventura Casiano Mendoza

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           19 de enero de 2017

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            **Dioneldo Velasquez Navarro**

                          Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:            D.V.V.N.

Date / Fecha:                 19 de enero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Florente Solano Garcia**

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                       19 de enero de 2017

Date / Fecha:

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

——————

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Enrique Romero

Legal Representative / Abogado:     Michael Faillace & Associates, P.C. _____

Signature / Firma:                 _Enrique Romero_ _____

Date / Fecha:                      _____ 19 de enero de 2017 _____

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              **Gabino Pajarito**

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                     19 de enero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Gerardo Carretero Gutierrez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     19 de enero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 19, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Mario Ubaldo Moreno

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     19 de enero de 2017

*Certified as a minority-owned business in the State of New York*